O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COREY WILLIAMS,<br><br>                Plaintiff,<br><br>   v.<br><br>RICARDO GARCIA et al.,<br><br>                Defendants. | Case No.: 2:21-cv-08077-MEMF(PLAx)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS [ECF NO. 36]; GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE [ECF NO. 36-3]; AND GRANTING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE [ECF NO. 39-1]** |

     Before the Court is the Motion to Dismiss and Request for Judicial Notice filed by Defendants Ricardo Garcia, Mark Ridley-Thomas, Hilda Solis, Sheila Kuehl, Law Offices of the Los Angeles County Public Defender, County of Los Angeles, Ronald Brown, Kelly Emling, Laura Green, Michael Suzuki, Jenny Brown, Daniel Kuperberg, and Ruben Marquez and the Request for Judicial Notice filed by Plaintiff Corey Williams. ECF Nos. 36, 36-3, 39-1. On September 1, 2022, the Court held a hearing on the Motion.

     For the reasons stated herein, the Court GRANTS in part Defendants' Motion to Dismiss, GRANTS Defendants' Request for Judicial Notice, and GRANTS Plaintiff's Request for Judicial Notice.

# BACKGROUND

## I. Factual Background[1]

Plaintiff Corey Williams ("Williams") is an individual residing in the County of Los Angeles. SAC ¶ 14.

Defendants Ricardo Garcia, Ronald Brown, Kelly Emling, Laura Green, Michael Suzuki, Jenny Brown, Daniel Kuperberg, and Ruben Marquez (collectively, the "Individual Public Defender Defendants") served as Public Defenders at the Office of the Los Angeles County Public Defender ("Public Defender's Office"). *Id.* ¶¶ 15–22. Defendants Mark Ridley-Thomas, Hilda Solis, and Sheila Kuehl (collectively, "BOS Defendants"), in their capacity as Board Members of the Public Defender's Office, served as administrators and supervisors. *Id.* ¶ 25.

Williams served more than eight years in state prison for a sex-related conviction. *Id.* ¶ 59. On January 30, 2008, near the end of his sentence, and before he was released from prison, the Los Angeles County District Attorney's office filed a petition under California Welfare & Institutions Code § 6600 to have Williams committed as a sexually violent predator ("SVP"). *Id.* Williams was subsequently held in custody in a psychiatric hospital for more than thirteen years awaiting trial. *Id.* ¶ 8.

Throughout the majority of his thirteen-year detention, Williams was represented by three different attorneys from the Public Defender's Office. *Id.* ¶ 60. In November 2019, the third Public Defender on Williams's case declared a conflict of interest and private counsel was appointed. *Id.* ¶ 227.

Williams brings this case to address what he contends are unconstitutional delays in bringing his SVP case to trial.

## II. Procedural History

On October 11, 2021, Williams filed his first Complaint against the County of Los Angeles, the Law Offices of the Los Angeles County Public Defender (collectively, the "Municipal

---

[1] All factual allegations are taken from Plaintiff Corey Williams's Second Amended Complaint unless otherwise noted. ECF No. 32 ("SAC").

2

Defendants"), the Individual Public Defender Defendants, and the BOS Defendants (collectively "Defendants"), alleging causes of action for: (1) deliberate indifference to constitutional violations, 42 U.S.C. § 1983, and (2) municipal liability for constitutional violations, 42 U.S.C. § 1983. *See generally* Compl. On January 10, 2022, Williams filed his First Amended Complaint. ECF No. 26. On March 14, 2022, Williams filed his SAC. ECF No. 32. Defendants now petition the Court to dismiss this action. ECF No. 36 ("Motion" or "Mot."). The Motion was completely briefed on June 30, 2022. ECF Nos. 39 ("Opposition" or "Opp'n"), 40 ("Reply"). A hearing was held on the Motion on September 1, 2022.

## REQUEST FOR JUDICIAL NOTICE

### I. Applicable Law

A court may take judicial notice of facts not subject to reasonable dispute where the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Under this standard, courts may take judicial notice of "undisputed matters of public record," but generally may not take judicial notice of "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001*), overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

### II. Discussion

Defendants submit—and ask the Court to take judicial notice of—one (1) exhibit in support of their Motion to Dismiss:

1. Waiver of Appearance filed in *People v. Corey Williams*, Case No. ZM012830, (Los Angeles Super. Ct. June 9, 2010).

Plaintiff submits—and asks the Court to take judicial notice of—one (1) exhibit in support of his Opposition to the Motion to Dismiss:

1. Order following Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint in *Zavala v. Ronald Brown, et al.*, Case No. 2:18-cv-4472-SJO(ASx), (C.D. Cal. April 23, 2019).

Although a district court generally may not consider any material beyond the pleadings in ruling on a motion to dismiss, the court may take judicial notice of matters in the public record. *Lee*,

3

250 F.3d at 689–90. The Ninth Circuit has recognized public records, including court documents, as proper subjects for judicial notice. *See, e.g., U.S. v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). Courts generally "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. v. Black*, 482 F.3d at 1041 (internal quotations omitted).

Here, the exhibit submitted by Defendants and the exhibit submitted by Plaintiff fall into the category of judicial records that courts have deemed proper for judicial notice. The Court therefore GRANTS Defendants' Request to take judicial notice of their Exhibit 1 and GRANTS Plaintiff's Request to take judicial notice of his Exhibit 1.

## MOTION TO DISMISS

I.  **Applicable Law**

### A. Standard Governing 12(b)(6) Motions

Under Federal Rule of Civil Procedure Rule 12(b)(6), a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted." The purpose of Rule 12(b)(6) is to "enable defendants to challenge the legal sufficiency of claims asserted in a complaint." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts to support a cognizable legal theory. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than "[t]hreadbare recitals of the elements of a cause of action." *Id*. "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at 1159; *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("We accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."). This tenet, however, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Whether to grant leave to amend is left to the district court's "sound discretion." *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996). Rule 15(b) instructs that the court should "freely give leave when justice so requires." FED. R. CIV. P. 15(b)(2); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). The Ninth Circuit has repeatedly held that this principle should be "applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Owens v. Kaiser Found. Health Plan*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo*, 893 F. 2d at 1079); *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

When exercising its discretion, precedent dictates that the district court should weigh various factors in its determination including undue delay, bad faith or "dilatory motive," "repeated failure to cure deficiencies by amendments previously allowed," undue prejudice to the opposing party, and "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). While prejudice to the opposing party "carries the greatest weight," a strong showing of any of these factors may justify the denial of leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

**B. Section 1983 Liability**

Section 1983 creates a cause of action against a "person who, under color of any [state law], subjects, or causes to be subjected, any [person] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). A plaintiff bringing a claim under Section 1983 must show that "(1) the action occurred 'under color of state law' and (2)

the action resulted in the deprivation of a constitutional right or federal statutory right." *Id.* (citation omitted).

### i. Municipal Liability Under Section 1983

Municipalities are "persons" under 42 U.S.C. § 1983 and thus may be liable for causing a constitutional deprivation. *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). A municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents, however. *Id.* at 694. Instead, it is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible. *Id.*

A claim may also be based on a "policy of inaction," including "failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012); *see also Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (an unconstitutional policy "can be one of action or inaction"). To impose liability against a county for its failure to act, a plaintiff must show: (1) that a county employee violated the plaintiff's constitutional rights; (2) that the county has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights. *Long*, 442 F.3d at 1186.

## II. Discussion

### A. Williams has failed to establish a Section 1983 claim against the Municipal Defendants.

Williams alleges that the Municipal Defendants are responsible for unconstitutional delays in bringing his SVP case to trial. Defendants argue that the Section 1983 claim against the Municipal Defendants should be dismissed because: (1) Williams fails to allege the existence of any official customs or polices that gave rise to a violation of his constitutional rights; (2) Williams describes customs and practices that are not related to his case; (3) the alleged delay of his SVP trial is not attributable to the policies of the Public Defender's Office; and (4) Williams's allegations regarding the Public Defender's Office's conflict of interest does not establish a *Monell* violation. Mot. at 12–19. In response, Williams argues that his SAC specifically alleges customs and practices that violated his rights and amounted to deliberate indifference. Opp'n at 5.

In the SAC, Williams alleges the existence of the following customs and practices within the Public Defender's Office that resulted in that unconstitutional delays in bringing SVP cases to trial, including his own.

269. These practices, customs, policies and procedures included:

a. Preventing and restraining the attorneys in its SVP Unit from filing *Litmon-Vasquez* motions to dismiss[2], writs or other legal challenges of the SVP petitions filed against SVP clients/detainees on constitutional grounds because they are counter to the interests of the Public Defender's Office and would expose the systemic dysfunctions present in the Public Defender's Office and the fact that the Public Defender's Office had violated the constitutional rights of their SVP client/detainees;

b. Waiving or failing to challenge evidence at probable cause at the initiation of SVP proceedings;

c. Failing to investigate all meaningful defenses to SVP proceedings;

d. Failing to timely challenge the use of juvenile records and criminal history by the prosecution and prosecution's experts;

e. Failing to regularly bring SVP detainees to court for hearings, or to otherwise ensure that SVP detainees were in court or that they would appear by video conference, so as to conceal from SVP detainees their delays in processing their cases in a timely manner;

f. Failing to communicate to SVP client/detainees the status of their cases, the strategies which were to be employed in defending their case, and the likelihood of success of their efforts;

g. Failing to obtain consent from SVP client/detainees to continue hearing dates, trials dates as well as other deadlines which were in their control;

h. Waiving of SVP client/detainees' appearance at hearings without securing their authority to do so and/or convincing SVP client/detainees to waive their appearance at hearings against their best interests;

i. Continuing trial dates and other related dates without client consent and without clients waiving their rights to speedy trials and/or convincing SVP client/detainees to waive time for trial against their best interests;

j. Agreeing to repeated continuances sought by the prosecution and/or seeking continuances without their clients' consent;

k. Ignoring requests from SVP clients/detainees to bring their case to trial promptly;

---

[2] A *Litmon-Vasquez* motion is one made to dismiss a petition brought under the SVP Act for failing to bring the matter to trial in a timely manner. *People v. Litmon*, 162 Cal. App. 4th 383, 399 (2008).

l. Failing to meet reasonable deadlines in SVP cases;

m. Failing to timely secure experts, to ensure that such experts are properly prepared, and to ensure that such experts complete their work in a timely fashion;

n. Failing to pay experts on a timely basis so as to avoid having experts refuse to work with the Los Angeles Office of the Public Defender;

o. Allowing experts' reports to lapse or otherwise go stale;

p. Concealing material facts from SVP clients/detainees;

q. Concealing their misconduct from SVP clients/detainees;

r. Failing to inform their clients of conflicts of interests based on their failure to bring SVP cases to trial in timely and constitutional fashion;

s. Failing to inform clients of their right to bring a motion to dismiss their case under *People v. Litmon* (I and II) and in *People v. Vasquez*;

t. Failing to inform the court of conflicts of interest;

u. Failing to bring cases to trial within the stipulated time period with the District Attorney's Office after the passage of Proposition 83;

v. Failing to file oppositions to motions and other petitions by the prosecution;

w. Allowing SVP cases to sit idle for years without meaningful progress;

x. Failing to declare unavailability, such that long-delayed SVP cases could be assigned to outside/independent counsel;

y. Tolerating a conflict of interest, in violation of state bar ethics rules and standards, and failing to declare such conflicts so as to permit their SVP detainees to file *Litmon-Vasquez* motions after the extensive delays in the processing of their cases;

z. After extensive delays on their part, failing to inform SVP detainees of their right to file a motion under *People v. Litmon* and *People v. Vasquez* for the violation of their constitutional rights;

aa. Refusing to declare an actual conflict upon learning of it;

bb. Failing to object to and/or otherwise challenge the use of hearsay evidence by the prosecution's experts;

cc. Waiving probable cause and/or stipulating to the use of evidence at the initiation of the SVP proceedings; and, failing to raise viable defenses to the SVP allegations;

dd. Failing to adhere to the State Bar guidelines for the provision of indigent legal defense services, specifically failing to monitor the caseloads of the Public Defender attorneys;

SAC ¶¶ 269a–dd.

i. <u>Williams has adequately alleged a violation of his constitutional rights.</u>

First, the Court finds that Williams has adequately alleged a violation of his constitutional "rights under the Sixth Amendment and Fourteenth Amendment to a speedy trial, to counsel, and to due process and substantive due process." SAC ¶ 229. Furthermore, the Court finds that Williams has alleged that the Municipal Defendants "acted under color of law," SAC ¶ 37, in satisfaction of the first element under *Monell*. Defendants do not dispute this. As such, the Court proceeds to assess whether Williams has met the second and third elements under *Monell*.

ii. <u>Williams has sufficiently alleged customs and policies that amount to deliberate indifference.</u>

Defendants argue that Williams fails to sufficiently allege customs and policies that violated his constitutional rights under *Monell* as he (1) describes customs and policies that are unrelated to this action; (2) fails to establish a connection between the delays in litigation and Defendants' actions and (3) alleges a conflict of interest that does not come under *Monell*. Mot. at 13–19.

In order to satisfy the second element of *Monell*, Williams must demonstrate that an "official policy, custom, or pattern" on the part of the Municipal Defendants was "the actionable cause of the claimed injury." *Harper v. City of Los Angeles*, 533 F.3d 1022, 1026 (9th Cir. 2008). A "policy" is "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Long*, 442 F.3d at 1185 (internal quotations omitted).

The Court finds that Williams alleges deliberate patterns and policies of failing to represent SVP clients, *see* SAC ¶¶ 269a–dd, 272, that go beyond isolated acts of misconduct in the Public Defender's Office. Furthermore, Williams has alleged that the Public Defender's Office was aware of these shortcomings and discussed its inability to provide SVP clients with a speedy trial during its monthly staff meetings. *See, e.g.*, SAC ¶ 32(m), (p). The Court finds these allegations sufficient to establish an "official policy, custom, or pattern" on the part of the Municipal Defendants

Defendants do not appear to contest that these policies constituted deliberate indifference and instead focus on whether these policies were the "moving force" behind the alleged misconduct in

Williams's case (third element under *Monell*). As such, the Court will proceed to address the third and final element under *Monell* below.

        iii. <u>Williams has failed to allege that the customs and policies of the Public Defender's Office were the moving force behind the constitutional violations in his case.</u>

Finally, in order to establish municipal liability under *Monell*, Williams must demonstrate that the polices at issue were the "moving force" behind the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. In other words, Williams must show that "the [Municipal Defendants'] conduct was the actionable cause of the claimed injury." *Harper*, 533 F.3d at 1026. "*Monell* will not be satisfied by a mere allegation that a training program represents a policy for which the city is responsible"—the asserted policy must be "closely related" to the ultimate injury. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983; would result in de facto respondeat superior liability, a result rejected in *Monell*." *Id.* Williams's burden is to establish "that the injury would have been avoided" had proper policies been implemented. *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992).

In the SAC, Williams makes the following allegations concerning how the aforementioned customs and policies, *see* SAC ¶ 269, were the "moving force" behind the violation of his constitutional rights:

> 267.    Plaintiff's due process rights were violated by the 13-year delay in bringing his case to trial as alleged above in the first claim for relief. As a result of the aforementioned acts and omissions of defendants Ronald Brown, Jenny Brown, Emling, Green, Suzuki, Kuperberg, Marquez, Mark Ridley-Thomas, Hilda Solis and Sheila Kuehl and DOES 1 through 10, plaintiff's Fourteenth Amendment due process rights were violated.
>
> 274.    As a direct and proximate result of the aforementioned acts alleged herein, Mr. Williams was detained for more than 13 years in violation of his due process rights as alleged in the first claim for relief which caused him serious and permanent injuries and have physically, psychologically, and emotionally impaired him permanently.
>
> 275.    As a result of the above customs, practices, policies and procedures of defendant County of Los Angeles and of defendant Public Defender's Office, Mr. Williams was damaged and injured as alleged above by being made to endure a wrongful 13-year pre-trial detention.

SAC ¶¶ 267, 274, 275.

Based upon these allegations, the Court finds that Williams fails to establish how the aforementioned customs and polices, *see* SAC ¶ 269, were the "moving force" behind the violation of his constitutional rights. Williams does not address each custom and policy individually and explain how each resulted in injury. *See* Dougherty v. City of Covina, 654 F.3d 892, 900–01 (9th Cir. 2011) ("The Complaint lacked any factual allegations regarding key elements of the *Monell* claims, or, more specifically, any facts demonstrating that his constitutional deprivation was the result of a custom or practice of the City of Covina or that the custom or practice was the 'moving force' behind his constitutional deprivation."). Instead, Williams conclusorily alleges that his injuries were the "direct and proximate result of the aforementioned [customs and policies]." *See e.g.*, *id.* ¶ 274. While a complaint does not need detailed factual allegations, Williams must present more than "[t]hreadbare recitals of the element[ ] of [causation]." *Iqbal*, 556 U.S. at 678. Thus, Williams has insufficiently alleged the causation element necessary to establish *Monell* liability.

For these reasons, the Court GRANTS the Motion as it relates to the Section 1983 claims against the Municipal Defendants. After weighing the various factors concerning leave to amend, the Motion is granted WITH LEAVE TO AMEND.

### C. The Individual Public Defender Defendants may be held liable under Section 1983.

Defendants argue that Williams's claims against the Individual Public Defender Defendants should be dismissed because public defenders do not act under color of state law. Mot. at 19. Williams counters that the Individual Public Defender Defendants acted under the color of state law in making *administrative* decisions, where, as here, the Individual Public Defender Defendants did not serve as trial counsel and instead played a supervisory role in the department. Opp'n at 12.

It is well established that court-appointed and retained defense attorneys generally do not act under color of state law for purposes of Section 1983 and rather act as advocates for their clients. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (a court appointed attorney representing an indigent client does not act under color of state law when performing the traditional functions of a lawyer); *Miranda v. Clark Cnty. of Nevada*, 319 F.3d 465, 468 (9th Cir. 2003) (upholding dismissal of

11

complaint on basis that public defender was not acting on behalf of county for purposes of Section 1983 in representing plaintiff's interests).

A public defender acts under color of law, however, when performing administrative functions. *Miranda*, 319 F.3d at 469; *see also Polk Cnty.*, 454 U.S. at 325 (listing hiring and firing decisions as administrative functions that might be under color of state law). In order to determine whether the public defenders are acting under color of state law, the Court must consider whether their actions were performed in an administrative or legal capacity. The SAC alleges that these Defendants "failed to abolish, revoke, rescind or otherwise put a stop to [the following] customs and practices:"

 a. Implement internal measures in the SVP Unit to advance or otherwise expedite the bringing of the SVP cases to trial;

 b. Prioritize the oldest SVP cases to ensure they would get to trial in an expedited fashion;

 c. Institute tighter controls over supervisors in the SVP Unit to ensure that they managed their subordinates in a fashion that ensured that the older SVP cases would get to trial promptly;

 d. Impose time limits for the bringing of SVP cases to trial;

 e. Establish and implement a policy, custom or practice whereby the PD's office would declare conflicts or declare "unavailability" in old SVP cases so as to ensure that the courts could appoint private counsel or counsel from the alternate public defender's office to bring SVP cases to trial, and;

 f. Establish and implement a policy, custom or practice whereby the PD's office would declare conflicts of interest or declare "unavailability" in those older SVP cases that were subject to a *Litmon* motion so as to permit the court to appoint private counsel to represent those detainees who had valid grounds to bring such motions.

SAC ¶ 250.

As a threshold matter, the Court acknowledges that the Individual Public Defender Defendants did not represent Williams "as a trial attorney in any of the underlying SVP commitment proceedings, and they did not appear as counsel for [Williams] in any of the [underlying] SVP proceedings." *Id.* ¶ 230. While these facts suggest that the Individual Public Defender Defendants were performing an administrative function, and thereby acting under color of state law, the Court must still look beyond a defendant's job title and assess the specific actions taken by the defendant. *See Polk Cnty.*, 454 U.S. at 319–25.

Like in *Miranda*, the Court finds that the Individual Public Defender Defendants were "not acting under any of the ethical standards of the lawyer-client relationship," and were instead performing administrative functions. *Miranda*, 319 F.3d at 469. The failure to expedite SVP trials and "[i]nstitute tighter controls over supervisors" is more akin to the administrative "hiring and firing decisions" for which Public Defenders may be held liable. SAC ¶ 250; *see also Polk*, 454 U.S. at 325; *see also Georgia v. McCollum*, 505 U.S. 42, 54 (1992) (reaffirming that the Public Defender may be a state actor with respect to administrative or investigatory functions). For these reasons, the Court finds that Williams has properly alleged that the Individual Public Defender Defendants were acting under color of state law.

"The remaining question is whether the alleged policy resulted in deprivation of the plaintiff's constitutional rights." *Miranda*, 319 F.3d at 470. As discussed above, *see supra* section II.A.i, the Court finds, and Defendants do not dispute, that Williams has adequately pleaded he was deprived of his constitutional "rights under the Sixth Amendment and Fourteenth Amendment to a speedy trial, to counsel, and to due process and substantive due process." SAC ¶ 229.

For these reasons, the Court DENIES the Motion as to the Individual Public Defender Defendants.

**D. The BOS Defendants do not have legislative immunity under Section 1983.**

Finally, Defendants argue that the BOS Defendants are entitled to legislative immunity. Mot. at 22. Williams responds that the BOS Defendants are not shielded from liability because their actions, with regard to managing the SVP Unit, were not legislative in nature. Opp'n at 15–22.

Government entities are entitled to absolute legislative immunity for all actions taken "in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (internal quotation omitted). However, "not all governmental acts by . . . a local legislat[or] are necessarily legislative in nature." *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 580 (9th Cir. 1984). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. The Ninth Circuit has established a four-factor test to determine whether an act is legislative and therefore entitled to immunity: (1) "whether the act involves ad hoc decisionmaking, or the formulation of policy"; (2) "whether the act applies to a few

individuals, or to the public at large"; (3) "whether the act is formally legislative in character"; and (4) "whether it bears all the hallmarks of traditional legislation." *Kaahumanu v. Cnty. of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2013).

                i. <u>The BOS Defendants were not engaged in ad hoc decisionmaking.</u>

Ad hoc decisions are "taken based on the circumstances of particular case[s]" and do not "effectuate policy or create a binding rule of conduct." *Cmty House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 961 (9th Cir. 2010). In other words, it "is made 'with a particular end or purpose, as distinguished from a coordinated policy." *Id.* (internal quotations omitted). "Budgetary decisions such as a decision to eliminate an employment position, typically involve the formulation of policy. On the other hand, decisions directed toward specific individuals, such as a decision to indemnify a government employee, are normally considered to be ad hoc." *Id.* (citations omitted).

Like in *Zavala*—which the Court takes judicial notice of pursuant to Williams's request—the Court finds that this factor weighs in favor of finding legislative immunity. The SAC's discussion of the BOS Defendants' actions refer more generally to policies instituted within the SVP Unit, at large:

> 252. The BOS Defendants and DOES 1 through 5 knowingly refused to terminate the acts, customs, practices and misconduct of their subordinates, which they knew was causing and would cause constitutional injury upon the SVP detainees in their charge. Said defendants failed to take reasonable measures to institute internal measures within the SVP Unit to address the long delays in getting SVP cases to trial, they failed to institute new training of their subordinates in the management of SVP cases so as to ensure that SVP cases got to trial in a timely fashion, and they failed to discipline their subordinates for failing to get the SVP cases to trial in a timely fashion.

SAC ¶ 252.

There is nothing in the SAC to establish that the BOS Defendants' decisions were intended to affect Williams in particular as opposed to implementing a larger policy goal of managing the SVP caseload. As such, the Court finds that the BOS Defendants were not engaged in ad hoc decisionmaking and this factor weighs in favor of finding legislative immunity.

/ / /

/ / /

ii. <u>The BOS Defendants' actions did not apply to the public at large.</u>

Next, the Court must consider whether the BOS Defendants' actions applied to a few individuals or the public at large. While Williams has not alleged how many public defenders were impacted by the BOS Defendants' policies, the policies of the Public Defender's office certainly apply to a discrete number of individuals and not to the public at large. As such, the Court finds that this factor weighs against a finding of legislative immunity.

iii. <u>The BOS Defendants' actions were unrelated to traditional legislation and do not bear the hallmarks of traditional legislation.</u>

While the parties do not dispute that the BOS Defendants are legislators, the Court must still consider whether their actions with regard to managing the SVP Unit were not legislative in nature. As courts has repeatedly recognized, not all governmental acts by a local legislator, or even a local legislature, are necessarily legislative in nature. *See e.g., Cinevision Corp v. Burbank*, 745 F.2d 560, 580 (1984). "The essentials of the legislative function are the determination of legislative policy and its formulation and promulgation as a defined a binding rule of conduct." *Yakus v. United States*, 321 U.S. 414 424 (1944).

Here, the allegations against the BOS Defendants do not concern official legislation, but rather concern actions taken in their capacity as supervisors of the Public Defender's Office. The SAC discusses their "fail[ure] to take reasonable measures to institute internal measures within the SVP Unit, "fail[ure] to institute new training of their subordinates," and "fail[ure] to discipline their subordinates." SAC ¶ 252. It is therefore their alleged failure to effectively manage, train, and discipline—not their failure to legislate—that is the subject of this action. Their actions were unrelated to traditional legislation and do not bear the hallmarks of traditional legislation. As such, the Court finds that these two factors weigh against a finding of legislative immunity.

Having considered all four factors under the Ninth Circuit's test, the Court finds that the BOS Defendants are not entitled to legislative immunity.

**E.  The BOS Defendants may be held liable under Section 1983.**

Defendants also argue that Williams's claims against the BOS Defendants should be dismissed because public defenders do not act under color of state law. Mot. at 23. Williams

responds that this exemption does not apply to the BOS Defendants performing a supervisory role. Opp'n at 22.

As discussed above, *see supra* section II.C., a public defender acts under color of law when performing administrative functions. *Miranda*, 319 F.3d at 469. Like in *Miranda*, the Court finds that the BOS Defendants were "not acting under any of the ethical standards of the lawyer-client relationship," and were performing an administrative function. *Miranda*, 319 F.3d at 469. Their failure to manage the SVP caseload and train and discipline their subordinates is more akin to administrative "hiring and firing decisions" for which Public Defenders may be held liable. SAC ¶ 252; *see also Polk*, 454 U.S. at 325. For these reasons, the Court finds that the BOS Defendants were acting under color of state law.

"The remaining question is whether the alleged policy resulted in deprivation of the plaintiff's constitutional rights." *Miranda*, 319 F.3d at 470. As discussed above, *see* supra section II.A.i, the Court finds, and Defendants do not dispute, that Williams has adequately pleaded that he was deprived of his constitutional "rights under the Sixth Amendment and Fourteenth Amendment to a speedy trial, to counsel, and to due process and substantive due process." SAC ¶ 229.

For these reasons, the Court DENIES the Motion as to the BOS Defendants.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

For the foregoing reasons, the Court ORDERS as follows:

1. The Court GRANTS Defendants' Motion to Dismiss as it relates to the Municipal Defendants WITH LEAVE TO AMEND;
2. The Court DENIES Defendants' Motion to Dismiss as it relates to the Individual Public Defender Defendants;
3. The Court DENIES Defendants' Motion to Dismiss as it relates to the BOS Defendants;
4. The Court GRANTS Defendants' Request for Judicial Notice; and
5. The Court GRANTS Williams's Request for Judicial Notice.

**IT IS SO ORDERED.**

Dated: February 17, 2023

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge